UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

GARY LEE SMITH

                Petitioner,

      v.                                      **MEMORANDUM AND ORDER**
                                                    20-CV-2083 (RPK)

WARDEN,

                Respondent.

------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

      Petitioner Gary Lee Smith is serving a state prison sentence after being convicted of attempted murder, rape, and other crimes in New York state court. The state appellate court affirmed his conviction on direct appeal, and the New York Court of Appeals denied discretionary review. Petitioner now seeks a writ of habeas corpus under 28 U.S.C. § 2254, raising several claims. Because the petition contains both exhausted and unexhausted claims and because petitioner has not shown good cause for a stay, the Court has two options: either (1) dismiss the entire petition outright without prejudice or (2) disregard the unexhausted claims and adjudicate only the exhausted ones. Petitioner is directed to advise the Court by September 1, 2025 of which option he prefers. If petitioner does not respond, the Court will assume petitioner would like the Court to adjudicate only the exhausted claims and will proceed to do so.

## BACKGROUND

      A grand jury charged petitioner with second-degree attempted murder, first-degree assault, second-degree assault, third-degree rape, and second-degree menacing in connection with a July 2015 attack on his then-girlfriend. Indictment 14–15 (ECF Pagination) (Dkt. #24). The grand jury

1

also charged petitioner with third-degree assault and criminal obstruction of breathing or blood circulation in connection with an earlier attack in June 2015. *Id.* at 15–16.

At the conclusion of trial, the jury convicted petitioner on all charges. Trial Tr. dated 10/28/2016 10:14–12:24 (Dkt. #24-3). With respect to both the second-degree attempted murder charge and the first-degree assault charge, the court sentenced petitioner to twenty-five years imprisonment and twenty-five years of supervised release, to run concurrently with one another. Hearing Tr. dated 12/22/2016 28:09–19, 30:13–18 (Dkt. #24-5). With respect to the second-degree assault charge, the court sentenced petitioner to seven years imprisonment and five years of supervised release, also to run concurrently. *Id.* at 28:20–24, 30:13–18. With respect to the third-degree rape charge, the court sentenced petitioner to four years imprisonment and ten years of supervised release, to run consecutively with the sentences for the prior three convictions. *Id.* at 28:24–29:12. Finally, the court sentenced petitioner to one year imprisonment each on the misdemeanor charges of second-degree menacing, third-degree assault, and criminal obstruction of breathing or blood circulation. *Id.* at 29:13–16. The court did not state whether the sentences for the misdemeanor charges were to run consecutively or concurrently to the sentences for the felonies.

I. **Direct Appeal**

Petitioner appealed his conviction and sentence to the state appellate court, raising several grounds for relief. *See generally* Pet.'s App. Br. (Dkt. #24).

*First*, petitioner argued that the trial court erred by declining to suppress bloodstained sneakers taken by the police from petitioner's home during his arrest. *Id.* at 12–16. *Second*, petitioner contended the trial evidence was legally insufficient to support his convictions. *See id.* at 16–34. *Third*, petitioner claimed he was denied his right to present an adequate defense when the trial court denied his request to call two witnesses to impeach the victim's credibility. *See id.*

2

at 34–44.  *Fourth*, petitioner made several arguments respecting his sentence.  He argued that the trial court misapplied New York Penal Law § 70.25(2) by running his sentences for attempted murder and rape consecutively rather than concurrently, *see id.* at 44–50, that the court had impermissibly punished him for exercising his right to go to trial by imposing the maximum sentence authorized under New York law, *see id.* at 50–53, and that his lengthy sentence ran afoul of New York sentencing caselaw and the Eighth Amendment's prohibition on cruel and unusual punishment, *see id.* at 54–58.  *Fifth*, petitioner argued that he was denied the effective assistance of counsel because his lawyer apparently did not advise him "of his right to testify before the grand jury." *Id.* at 58.

The appellate division affirmed petitioner's conviction.  *See People v. Smith*, 106 N.Y.S.3d 318 (App. Div. 2019).  It rejected on the merits each of petitioner's arguments, with the exception of petitioner's ineffective-assistance-of-counsel argument, which it declined to review because it determined the claim should instead have been brought in a collateral proceeding under N.Y. Crim. Proc. L. § 440.10.  *Ibid.*  The New York Court of Appeals denied petitioner leave to further appeal. *See People v. Smith*, 137 N.E.3d 9 (N.Y. 2019).

## II.  Section 2254 Application

Petitioner then sought a writ of habeas corpus in federal court under 28 U.S.C. § 2254.  Petitioner submitted six filings in support of his application, and, given his *pro se* status, the Court will consider each of those filings as part of the petition.

In the first of these submissions, petitioner renews his argument that he received ineffective assistance of counsel as a result of the grand jury proceedings.  *See* Pet.'s Filing mailed 4/14/2020, at 1 (Dkt. #1) ("Pet. A").  The filing also asserts in passing that the trial judge was "prejudice[d]," and references the "Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments."  *Ibid.*

3

Petitioner's next filing, mailed on June 3, 2020, raises several additional claims. First, petitioner asserts that there was "legally insufficient evidence to support [his] conviction." Pet.'s Filing mailed 6/3/2020, at 1 (Dkt. #6) ("Pet. B"). Petitioner next states that the prosecutor "kept telling [the] all white jury they promise to convict [petitioner]," and that at some point the trial judge had "follow[ed the] jury out of [the] court room for deliberation." *Ibid.* (capitalization altered). And he asserts that "the jury was selected in a racially discriminatory manner," and that his lawyer "did not object" to this alleged *Batson* violation. *Id.* at 1–3. Additionally, petitioner argues that evidence that was the product of an unlawful search and seizure—presumably, the sneakers seized at the time of petitioner's arrest—was admitted at trial, and that this Fourth Amendment violation was "not b[r]ough[t] up at trial." *Id.* at 3. And he asserts that some witnesses made "lies under oat[h]." *Ibid.*

Another letter mailed two days later references several of the same claims mentioned in the first two filings—the Fourth Amendment claim relating to petitioner's sneakers, the *Batson* claim, the assertion that a witness lied on the stand, and the ineffective assistance claim relating to the grand jury proceedings. *See* Pet.'s Filing mailed 6/5/2020, at 1–3 (Dkt. #5) ("Pet. C"). But it also raises several new constitutional claims: that "the prosecution admitted hearsay and out of court statements against [him] in violation of the Confrontation Clause of the Sixth Amendment"; that a witness testified about "another incident that . . . had nothing to do with trial" in violation of petitioner's Fifth Amendment due process rights; and that petitioner's sentence was "illegal" and amounted to "cruel and unusual punishment" under the Eighth Amendment. *Id.* at 1–3 (capitalization altered). Additionally, the filing contained a passing citation to *United States v. Bagley*, 473 U.S. 667, 682 (1985), a case in the *Brady* line holding that undisclosed evidence is "material" for *Brady* purposes "only if there is a reasonable probability that, had the evidence been

4

disclosed to the defense, the result of the proceeding would have been different." *See* Pet. C 1. But the filing did not identify what material evidence, if any, was alleged to have been withheld.

Several months later, in September 2020, petitioner submitted a form Section 2254 petition. In addition to referencing several of the arguments already discussed, petitioner raises a handful of new contentions. He first expands on the alleged improprieties in the trial judge's conduct during jury deliberations, asserting (without citing to any portion of the record) that "[t]he judge follow[ed] the jury out for their deliberation, and upon returning himself, stated that [the] jury had asked him for more papers to help them on their decision . . . because they the jury could not reach [a] decision with what was heard." Pet.'s Filing mailed 9/3/2020, at 5 (ECF pagination) (Dkt. #10) ("Pet. D"). Petitioner next expands on his Fourth Amendment claim, contending that "[t]he hearing court erred in rendering a *Mapp* decision on the basis of testimony derived from a *Huntley* hearing" and that "[t]he people did not establish probable cause for seizure of [the] sneakers" due to the lack of a "*Mapp* hearing." *Id.* at 2. Petitioner also reraises his earlier contention, *see* Pet. B 1, that the prosecutor "told [the] jury [that] they had promise[d] . . . to find [petitioner] guilty" and argued that his trial counsel should have objected to this statement. Pet. D 5. Additionally, petitioner adds more context to his claim that a witness testified about "another incident," Pet. C 1, explaining that "[Alvin Horne] who is a retired correctional officer got on [the] witness stand and told of an []argument he witness[ed] in July of 2015." Pet. D 6. Finally, petitioner's filing mentions that he had originally been offered an eight-year sentence as part of a plea agreement, suggesting that the sentence he received was retaliation for petitioner's exercising his right to proceed to trial. *See id.* at 3.

Later that month, petitioner filed another letter, asserting that his trial counsel had rendered ineffective assistance when he failed to object to statements the trial judge and the prosecutor made to the jury. *See* Pet.'s Filing mailed 9/24/2020, at 1 (Dkt. #11) ("Pet. E").

5

Finally, on the same day, petitioner filed a second form Section 2254 petition. For the first time, petitioner fleshes out the alleged *Brady* violation suggested in his prior filing, *see* Pet. C. 1, arguing that the "prosecutor commit[ted] a *Brady* violation concerning blood-testing evidence," *see* Pet.'s Filing mailed 9/24/2020, at 5 (ECF pagination) (Dkt. #13) ("Pet. F"). But once again petitioner did not identify particular evidence the state failed to turn over. Petitioner also fleshes out his claim regarding the sufficiency of the evidence against him, *see* Pet. B 1, arguing that the jury was "not justified in relying on" the victim's "inconsisten[t]" testimony, Pet. F 2, and that no knife "was found at the crime scene," *id.* at 6. Petitioner further argues that his trial counsel rendered ineffective assistance by "fail[ing] to conduct any pretrial discovery and fail[ing] to file [a] timely motion to suppress illegally seized evidence." *Id.* at 13.

Synthesizing the contentions raised across the six filings, petitioner's Section 2254 application, liberally construed, presents the following claims for relief. The following claims *were* presented to and ruled on by the appellate division:

- **Sentencing claims.** Petitioner raises two arguments respecting his state-court sentence.
    - First, petitioner argues that the state court unlawfully imposed consecutive sentences, invoking the Eighth Amendment's protection against cruel and unusual punishment. *See* Pet. C 3; Pet. A 1.
    - Next, petitioner contends that the sentencing judge impermissibly penalized him for declining the plea offer and proceeding to trial. *See* Pet. D 3.
- **Sufficiency of the evidence.** Petitioner argues that the evidence was "legally insufficient" to support his convictions. *See* Pet. B 1.
- **Fourth Amendment violation.** Petitioner argues that the trial court should have held a separate suppression hearing regarding the admissibility of the bloodstained sneakers and that the trial court erred in admitting the sneakers into evidence. *See* Pet. B 3; Pet. C 2; Pet. D 2.

Petitioner also raises several claims that were *not* presented to and ruled on by the state courts, specifically:

6

- ***Batson* violation.** Petitioner contends that the jury selection process was tainted by race discrimination in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). *See* Pet. B 1–3; Pet. C 1.

- **Confrontation Clause violation.** Petitioner argues that the prosecution relied on hearsay evidence that denied him his Sixth Amendment right to confront the witnesses against him. *See* Pet. C 1, Pet. D 6.

- **Due process violations.** Petitioner argues that he was denied a fair trial in several ways:

    o First, petitioner argues that the prosecutor improperly told the jury that they had promised to convict petitioner. *See* Pet. B 1; Pet. D 5.

    o Next, petitioner argues that the trial judge was prejudiced against him and improperly followed the jury out of the courtroom during their deliberations. *See* Pet. A 1; Pet. B 1; Pet. D 5.

    o Additionally, petitioner argued that the trial court improperly permitted Alvin Horne to testify regarding the June 2015 incident between petitioner and the victim. *See* Pet. C 1; Pet. D 6.

    o Lastly, petitioner asserted that some unnamed witnesses lied on the stand. *See* Pet. B 3; Pet. C 1.

- ***Brady* violation.** Petitioner argues that the prosecution ran afoul of its obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose material exculpatory evidence by failing to turn over unspecified "blood-testing evidence," Pet. F 5; *see* Pet. C 1.

- **Ineffective-assistance-of-counsel claim.** Finally, petitioner asserts that he was denied effective assistance of counsel based upon (1) pretrial counsel's failure to advise him of his right to testify in front of the grand jury, *see* Pet. C 3; (2) trial counsel's alleged failure to conduct pretrial discovery, *see* Pet. F 13; (3) trial counsel's failure to move to suppress petitioner's sneakers, *see ibid.*; (4) trial counsel's failure to raise a *Batson* challenge during jury selection, *see* Pet. B 1–3; and (5) trial counsel's failure to object to the prosecutor's statements to the jury and the judge's actions regarding the jury, *see* Pet. E 1.

## DISCUSSION

### I. Exhaustion

A prisoner in state custody "must exhaust his . . . state court remedies" before a district court can grant habeas relief. *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005).

A claim is unexhausted when a litigant still "has the right under the law of the State to raise, by any available procedure, the question presented" by the claim. 28 U.S.C. § 2254(c). By

7

contrast, a claim is exhausted when a litigant has given "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

An exception exists: a claim as to which a litigant has not completed a full round of appellate review may nevertheless be "deemed exhausted" if the claim has been procedurally defaulted. *See Johnson v. Kirkpatrick*, No. 11-CV-1089 (CM) (AJP), 2011 WL 3328643, at *12 n.23 (S.D.N.Y. Aug. 3, 2011) (collecting cases); *see also Mejia v. New York*, No. 17-CV-6362 (CJS), 2021 WL 409861, at *7 (W.D.N.Y. Feb. 5, 2021); *Gomez v. Brown*, 655 F. Supp. 2d 332, 346 (S.D.N.Y. 2009). That is, when "it is clear that the state court would hold the claim procedurally barred," a federal court may conclude that "a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (first quoting *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989); then quoting 28 U.S.C. § 2254(b)(1)(A)); *see Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001) (deeming claim exhausted when "any state court to which [p]etitioner might now present this claim *would almost certainly find it* procedurally barred" (emphasis added)); *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (deeming claim exhausted "because any attempt at exhaustion in the face of . . . procedural default would be futile").

Applying these principles here, the petition appears to be a mixed one.

**Claims Adjudicated on Direct Appeal.** The claims related to petitioner's sentence, sufficiency-of-the-evidence, and the alleged Fourth Amendment violation relating to the sneakers were presented to the state appellate court and ruled on by that court. Leave to appeal was denied by the New York Court of Appeals. These claims are thus fully exhausted.

**Procedurally Defaulted Claims.** Petitioner's *Batson*, Confrontation Clause, and due process claims were not presented to the state appellate court on petitioner's direct appeal and

8

appear to be exhausted by virtue of being procedurally defaulted. As relevant here, Section 450.10 of New York's Criminal Procedure Law entitles a criminal defendant to one direct appeal. *See* N.Y. Crim. Proc. L. § 450.10. Criminal defendants may also seek postconviction relief under Section 440.10, but such relief is barred where "sufficient facts appear on the record of the proceedings underlying the judgment to have permitted . . . adequate review of the ground or issue raised" on direct appeal and the defendant "unjustifiabl[y] fail[ed] to raise such ground or issue" in that appeal. *Id.* § 440.10(2)(c). This bar to postconviction relief does not apply to claims raising ineffective assistance of counsel. *Ibid.*

Petitioner is procedurally barred from seeking relief under Section 450.10 because he already exhausted his one direct appeal and failed to raise his *Batson*, Confrontation Clause, or due process claims. Petitioner therefore cannot seek relief on those claims under Section 450.10.

Petitioner is likewise barred from seeking relief under Section 440.10 because the trial record contains "sufficient facts" to permit "adequate review" of his claims. N.Y. Crim. Proc. L. § 440.10(2)(c). In support of his *Batson* claim, petitioner argues that "the jury was selected in a racially discriminatory manner." Pet. B 1. He also argues, in support of his Confrontation Clause claim, that "the prosecution admitted hearsay and out of court statements against [him]." Pet. C 1. And he raises several arguments in support of his due process claims—specifically that the trial judge was prejudiced against him, Pet. A 1, that the trial judge improperly followed the jury out of the courtroom, Pet. B 1; Pet. D 5, that Alvin Horne's testimony "had nothing to do with the trial," Pet. C 2; and that an unnamed witness lied on the stand, Pet. B 3; Pet. C 1. The record here permits review of those claims. It includes transcripts from jury selection, the pretrial suppression hearing, the trial, and the judge's instructions and comments to the jury. An appellate court relying on that record would be able to adequately review petitioner's claims relating to jury selection, the evidence admitted against him, and the trial judge's and prosecutor's interactions with the jury.

9

Moreover, petitioner fails to give any justification for his failure to raise those claims on direct appeal, as required under Section 440.10. *See* N.Y. Crim. Proc. L. § 440.10(2)(c). The claims are therefore procedurally barred under New York law.

Petitioner has neither shown "cause and prejudice to excuse the default," *Dretke v. Haley*, 541 U.S. 386, 388 (2004), nor "advance[d] . . . a credible and compelling claim of actual innocence," *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019) (quoting *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012)). Petitioner's *Batson*, Confrontation Clause, and due process claims are therefore exhausted as procedurally defaulted.

**Unexhausted Claims.** Finally, petitioner's ineffective-assistance-of-counsel claims and *Brady* claim appear to be unexhausted. The ineffective-assistance-of-counsel claims were never ruled on by the state courts, and petitioner appears to still have an opportunity to seek review in a Section 440.10 proceeding. *See MacLeod v. McCarthy*, No. 20-CV-1680 (EAW), 2024 WL 3022587, at *5 (W.D.N.Y. June 17, 2024) ("[A] court in New York State considering a C.P.L. § 440.10 motion may not deny ineffective assistance of trial counsel claims simply because they were based on errors apparent on the trial record."); N.Y. Crim. Proc. L. § 440.10(2)(c).

With respect to petitioner's *Brady* claim, petitioner argues that the prosecution violated its *Brady* obligations by failing to disclose unspecified "blood-testing evidence." Pet. F 5; *see* Pet. C 1. Petitioner did not raise that claim on direct appeal. Given petitioner's vague assertions, it is unclear whether there are "sufficient facts" in the record "to have permitted . . . adequate review" on direct appeal such that petitioner would be barred from seeking collateral review in a Section 440.10 proceeding. N.Y. Crim. Proc. L. § 440.10(2)(c). It is thus not "clear that the state court would hold the claim procedurally barred." *Grey*, 933 F.2d at 120 (citation omitted). Accordingly, remedies may still be available to petitioner in state court, meaning this claim also appears to be unexhausted.

10

## II. Disposition of Mixed Petitions

When confronted with a mixed habeas petition, a district court may: (1) dismiss the mixed petition in its entirety without prejudice, *see* 28 U.S.C. § 2254(b)(1)(A), *Rhines v. Weber*, 544 U.S. 269, 274 (2005); (2) allow the petitioner to withdraw the unexhausted claims and then proceed to the merits of the exhausted claims, *Rhines*, 544 U.S. at 278; or (3) stay the habeas petition while the petitioner finishes exhausting his claims, *id.* at 275–77. Although the Court may also deny the petition on the merits if the unexhausted claims are "plainly meritless," *id.* at 277; *see* 28 U.S.C. § 2254(b)(2), the Court declines to do so here given the undeveloped state of the record.

Nor will the Court stay the adjudication of the petition. Petitioner has not requested a stay, and the Court would decline to grant one in any event. District courts may sometimes stay adjudication of mixed habeas petitions that contain both exhausted and unexhausted claims, as an exercise of their "ordinar[y] . . . authority to issue stays . . . where such a stay would be a proper exercise of discretion." *Rhines*, 544 U.S. at 276 (citations omitted). The Supreme Court has cautioned, however, that stays of habeas petitions containing unexhausted claims should not be "employed too frequently," because doing so would frustrate the "objective of encouraging finality by allowing a petitioner to delay the resolution of federal proceedings." *Id.* at 277. They could also undermine "the goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." *Ibid.* Accordingly, the Supreme Court held that district courts should stay adjudication of mixed petitions and hold them in abeyance until the close of state postconviction proceedings on unexhausted claims only if the "petitioner ha[s] good cause for his failure to exhaust," the unexhausted claims are not "plainly meritless," and the petitioner has not "engaged in intentionally dilatory litigation tactics." *Id.* at 277–78.

11

Here, petitioner would not be entitled to a stay because petitioner has not shown good cause for his failure to exhaust, as *Rhines* requires. Although the Supreme Court did not define "good cause" in *Rhines*, "lower courts have determined that it requires a showing of either (1) 'some factor external to the petitioner [that] gave rise to the default' or (2) 'reasonable confusion,' which is more forgiving and incorporates the petitioner's subjective reasons for the delay in seeking state relief." *Martinez v. Mariuscello*, No. 16-CV-7933 (RJS), 2017 WL 2735576, at *2 (S.D.N.Y. June 23, 2017) (alteration in original) (quoting *Whitley v. Ercole*, 509 F. Supp. 2d 410, 417–18 (S.D.N.Y. 2007)).

Petitioner has not demonstrated good cause for failure to exhaust under either approach for the simple reason that petitioner has failed to provide any explanation at all for his failure to pursue collateral relief in state court in a Section 440.10 proceeding, despite being explicitly advised by the state appellate court that doing so was required (at least for one of petitioner's ineffective-assistance claims).

Accordingly, the Court has two options: dismiss the petition without prejudice in its entirety, or permit petitioner to withdraw the unexhausted claims and proceed to an adjudication on the merits of the exhausted ones. Petitioner is directed to advise the Court by September 1, 2025 which of these courses he prefers. Petitioner is advised that, if he elects to withdraw the habeas petition in its entirety, he "would be free to file a second habeas petition—but that petition would likely be time-barred, because the one-year statute of limitations to file a habeas petition has expired." *Peace v. Royce*, No. 20-CV-389 (RPK), 2020 WL 4808623, at *2 (E.D.N.Y. Aug. 17, 2020); *see Duncan v. Walker*, 533 U.S. 167, 178 (2001) (holding that AEDPA's one-year statute of limitations is not automatically tolled during the pendency of a federal habeas petition). If petitioner does not advise the Court on his preference, the Court will "assume that petitioner would prefer to have some of his claims adjudicated on the merits instead of having his entire

12

petition dismissed, and . . . deem the petition amended to excise petitioner's unexhausted claims." *Peace*, 2020 WL 4808623, at *2.

## CONCLUSION

For the foregoing reasons, petitioner is directed to file a letter by September 1, 2025, advising whether he wishes to (i) dismiss his pending habeas petition without prejudice in its entirety or (ii) proceed to an adjudication on the merits only on the exhausted claims raised in his petition.

SO ORDERED.

                                                                 */s/ Rachel Kovner*
                                                                 RACHEL P. KOVNER
                                                                 United States District Judge

Dated: July 1, 2025
       Brooklyn, New York